# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | |
|---|---|
| SUSANO AVILA, | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | ) CAUSE NO.: 2:08-CV-356-PRC |
| | ) |
| UNITED STATES STEEL CORPORATION | ) |
| (EC TIN), | ) |
|     Defendant. | ) |

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment [DE 28], filed by Defendant on May 18, 2010. The Plaintiff has not filed a response to the Motion for Summary Judgment and the time to do so has now passed.

## PROCEDURAL BACKGROUND

On December 10, 2008, Plaintiff Susano Avila filed a Complaint in this Court alleging harassment and discrimination on the basis of national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., as amended by the Civil Rights Act of 1991 ("Title VII"), and state law claims for negligent hiring, supervision, and retention, and negligent and intentional infliction of emotional distress. Defendant filed an Answer on February 11, 2009.

On January 9, 2009, this case was reassigned to the undersigned Magistrate Judge. The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

On May 18, 2010, Defendant filed a Motion for Summary Judgment. As of the date of this Opinion and Order, Plaintiff has failed to file a response and the time to do so has passed.

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *See id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other

materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *See Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e)(2); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) establishes that the opposing party's "response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50; *Doe*, 42 F.3d at 443.

# MATERIAL FACTS

Northern District of Indiana Local Rule 56.1 requires the moving party to file with the Court a "Statement of Material Facts" supported by appropriate citations to admissible evidence "to which the moving party contends there is no genuine issue." N.D. Ind. L.R. 56.1(a). In response, the opposing party is obligated to file with the Court a "Statement of Genuine Issues" supported by appropriate citation to admissible evidence to which "it is contended there exists a genuine issue necessary to be litigated." *Id.* Furthermore, "[i]n determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the 'Statement of Genuine Issues' filed in opposition to the motion . . . ." L.R. 56.1(b); *see also Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) (noting that the Seventh Circuit has routinely sustained "the entry of summary judgment when the non-movant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts"). In this case, as the moving party, the Defendant has submitted a Statement of Material Facts with appropriate citations to supporting evidence. However, Plaintiff has not submitted a response brief, much less a Statement of Genuine Issues; therefore, the following facts asserted by Defendant and supported by admissible evidence are considered to exist without controversy for the purposes of this Motion for Summary Judgment.

Plaintiff, who is of Mexican descent, began working at East Chicago Tin ("ECT") in November of 1974 when it was owned by Youngstown Steel. Plaintiff continued to work at ECT when the plant ownership changed to Jones and Laughlin Steel Company and later to LTV Corporation. LTV eventually went into bankruptcy and ECT was purchased by USX, which later became U.S. Steel. On March 1, 2001, Plaintiff became an employee of USX and later U.S. Steel.

Throughout his employment with U.S. Steel, Plaintiff was a member of the United Steel Workers of America union and his employment was governed by its collective bargaining agreement with Defendant. When LTV Corporation owned the ECT, managers were very restricted in the kind and amount of work that they could assign to union employees and in the amount of direct supervision they had over union employees. A union employee could refuse any supervisory direction if he or she felt that the direction fell outside of his or her written job description or if it was not clearly defined in his or her written job description. By contrast, under Defendant's ownership, managers have the right pursuant to the collective bargaining agreement to manage the kind and amount of work assigned to union employees and may supervise and direct any aspect of the employee's work.

The collective bargaining agreement provides that employees are expected to adhere to their schedule and if an employee has just cause to be late or absent from work, he or she will promptly contact the designated person to report the absence or tardiness and when the employee expects to return to work. Defendant's call off procedures require that an employee call off prior to the start of his or her shift to allow management to timely fill the opening by getting another employee to work the shift. Defendant's General Safety and Plant Conduct Rules and Regulations provides that "falsifying or assisting in falsification of personnel records, or any other records" and "[a]bsence from duty without notice to, and permission from, [a] supervisor or other designated person" may be cause for suspension preliminary to discharge. Def.'s Mot. Summ. J., Ex. P at 14.

The ECT is a continuous operation. Plaintiff worked in the Batch Annealing facility at the ECT's #2 Tin Mill as a Labor Grade 2 crane operator from 2001 through 2006. In 2006, he became a Labor Grade 3 batch anneal operator, which is also called a furnace operator. There are four furnace operator positions in the #2 Tin Mill.

In April 2005, Phillip A. Norwine became Plaintiff's supervisor at the ECT's #2 Tin Mill. From August 27, 2007, through September 14, 2007, one of the furnace operators, Eddie Adams, was absent from work because of medical reasons. As a result, the three remaining furnace operators had to cover three shifts for every day of the week. Between August 30, 2007, and September 6, 2007, Plaintiff worked eight midnight shifts in a row and was scheduled to work the third shift on September 6, 2007. On September 6, 2007, Plaintiff failed to report for the third shift and did not call before the start of the shift, as required by the Defendant's call off procedures. Further, at his October 22, 2009 deposition, Plaintiff testified that he reported to the Defendant that the reason for his absence was union business, even though he did not have union business on that day. As a result, Plaintiff was given three discipline slips and three five day suspensions for (1) unjustified absence on September 6, 2007, related to the third shift, (2) late report off on September 6, 2007, and (3) falsification on September 6, 2007, for providing a false excuse. On September 11, 2007, Plaintiff filed a complaint with a union representative alleging discrimination, intimidation, and harassment against Mr. Norwine. Defendant investigated the complaint and determined it to be without merit.

On September 20, 2007, Plaintiff had a preliminary hearing on the suspensions and Defendant converted the suspensions to discharge pursuant to the terms of the collective bargaining agreement. Plaintiff's union grieved his termination and Defendant allowed him to continue working during the pendency of the grievance.

Plaintiff cross-filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the East Chicago Human Rights Commission on September 26, 2007, alleging national origin discrimination occurring between August 30, 2007 and September 11, 2007. In particular, Plaintiff alleged that he was discriminated against by having to work nine straight

days[1], that other employees do not have to work as many days, that Mr. Norwine would not grant him time off, but would do so for others, and denied him sick time and harassed him on a continuous basis.

On May 14, 2008, Plaintiff failed to attend a mandatory safety/quality meeting and received a five day suspension that was converted to a termination effective May 26, 2008. Plaintiff's union again grieved his termination. Plaintiff cross-filed a Charge of Discrimination with the EEOC and East Chicago Human Rights Commission on June 10, 2008, alleging retaliation for filing his previous Charge.[2]

During his employment with Defendant, Plaintiff was disciplined numerous times for tardiness and unjustified absences. After the May 26, 2008 termination, the union continued to grieve Plaintiff's termination and Defendant offered, as a proposed settlement, Plaintiff the opportunity to continue working, but only under the terms in a standard "Last Chance Agreement". Plaintiff declined to accept the agreement.

On September 17, 2008, the EEOC issued Plaintiff a Notice of Right to Sue letter.

## ANALYSIS

Local Rule 7.1(a) regarding motions provides that "[f]ailure to respond or reply within the time prescribed may subject the motion to summary ruling." N.D. Ind. L.R. 7.1(a). The trial court's interpretation and application of its Local Rules is subject to great deference. *Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809-10 (7th Cir. 2005); *Cuevas v. U.S.*, 317 F.3d 751, 752 (7th Cir. 2003), *cert. denied*, 540 U.S. 909, 124 S. Ct. 282, 157 L. Ed.2d 197 (2003); *Tenner v. Zurek*, 168

---

[1] As of his October 22, 2009 deposition, Plaintiff alleges that he was scheduled to work ten straight days.

[2] In his Complaint, Plaintiff fails to allege a claim for retaliation. Therefore, the Court will not address this issue.

F.3d 328, 331 (7th Cir. 1999). In fact, a trial court has the authority to strictly enforce its Local Rules, even if summary judgment results. *Koszola v. Board of Education*, 385 F.3d 1104, 1109 (7th Cir. 2004); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921-22 (7th Cir. 1994) (upholding the trial court's strict enforcement of local rules on summary judgment); *Franklin v. U.S. Steel Corp.*, No. 2:04-CV-246, 2006 WL 905914, at *1 (N.D. Ind. Apr. 7, 2006); *Jones v. Union Tank Car Co.*, No. 05-CV-22, 2006 WL 1195218, at *1 (N.D. Ind. May 4, 2006).

In turn, Rule 56(e) states that "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading." Fed.R.Civ.P. 56(e)(2). The Rule further states that summary judgment, if appropriate, should be entered against a party who fails to respond as provided in the Rule. *See id.* Thus, summary judgment is appropriate if the non-movant does not respond and the "motion demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as matter of law." *Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir.1994).

Here, Defendant argues that the Plaintiff has failed to raise a genuine issue of material fact as to his Title VII and state law claims and summary judgment must be granted in its favor. The Court evaluates each argument in turn.

### A. Plaintiff's Claims under Title VII

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . national origin." 42 U.S.C. § 2000e-2(a)(1). In his Complaint, Plaintiff alleges national origin harassment and discrimination.

*1. Plaintiff's National Origin Harassment Claim*

"A hostile environment claim falls under the general rubric of harassment at the workplace, which can amount to prohibited discrimination in terms and conditions of employment." *Cerros v. Steel Technologies, Inc.*, 288 F.3d 1040, 1045 (7th Cir. 2002). To survive summary judgment on a hostile work environment claim, a plaintiff must establish that "(1) he was subjected to unwelcome harassment, (2) the harassment was based on his national origin, (3) the harassment was severe and pervasive enough to alter the conditions of his environment and create a hostile and abusive working environment, and (4) there is a basis for employer liability." *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008). "Federal civil rights laws do not exist to ensure that employees enjoy workplaces that are free from profanity or incivility; to be actionable, the conduct must either have a discriminatory character or purpose." *Mokry v. Partylite Worldwide, Inc.*, No. 07 C 0972, 2009 WL 2588888, at *16 (N.D. Ill. Aug. 20, 2009) (Slip Copy). "Title VII protects a worker against conduct which is sufficiently severe or pervasive that a reasonable person would find it hostile and which the victim himself subjectively sees as abusive." *Andonissamy*, 547 F.3d at 847.

Courts examine a variety of factors when evaluating whether a workplace is hostile, including the frequency of the supposed discriminatory conduct; its severity; whether the conduct is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with an employee's job performance. *Id.*

Defendant argues that Plaintiff fails to show any of the elements of his prima facie case. Plaintiff alleged at his October 22, 2009 deposition that Mr. Norwine harassed him by closely supervising and correcting him, cussing at him, making fun of his accent, would not give him requested time off, and by having him work ten straight days.

First, concerning the allegations that Mr. Norwine harassed him by cussing at him, Plaintiff testified at his October 22, 2009 deposition that Mr. Norwine did not use any bad words. Further,

while Plaintiff testified that he found Mr. Norwine's close supervision and corrections unpleasant, there is no evidence linking these actions to his national origin. Further undercutting Plaintiff's claim of national origin harassment is that at his deposition, Plaintiff testified that Mr. Norwine did not correct other employees and identified two co-workers–Juan Garfias and Jorge Chavez–who are both Mexican and were not subject to the same close supervision and correction that Mr. Norwine allegedly subjected Plaintiff to. Absent evidence connecting the alleged harassment to Plaintiff's national origin, Plaintiff's national origin harassment claim fails.[3] *See Mokry*, 2009 WL 2588888, at *17 (finding that a hostile work environment claim failed where there was no evidence that the alleged harassment was because of the plaintiff's protected characteristics); *Nair v. Principi*, No. 03 C 6806, 2005 WL 1950358, at *7 (N.D. Ill. Aug. 10, 2005) (finding that the plaintiff's hostile work environment claim failed where she failed to show that the alleged harassment involved racial or ethnic slurs or were connected to her national origin).

Plaintiff also testified at his deposition that he speaks with an accent and Mr. Norwine laughed at him because of it. However, Plaintiff did not indicate how frequently this occurred. "[R]elatively isolated instances of nonsevere misconduct will not support a claim of a hostile environment." *Filipovic v. K & R Exp. Systems, Inc.*, 176 F.3d 390, 398 (7th Cir. 1999). Plaintiff has failed to show that this conduct is severe and pervasive as to create a hostile work environment. *See Balthazar v. Southwestern Bell Corp.*, 606 F. Supp. 2d 881, 896-97 (N.D. Ill. 2009) (finding that a plaintiff's complaints that, in part, the supervisor mocked his accent and subjected him to frequent

_____

[3] The Court also finds that the workplace was not objectively hostile as, even assuming that the alleged conduct occurred frequently (Plaintiff did not provide how often the close supervision and corrections occurred), it was not severe, physically threatening, or humiliating (Plaintiff did not indicate that Mr. Norwine corrected or yelled at him in front of other employees), and Plaintiff has offered no proof that it interfered with his job performance. "This is normal workplace friction." *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 303 (7th Cir. 2004). Therefore, Plaintiff has failed to show that the treatment was severe or pervasive enough to interfere with his work performance. *Id.*; *see Rizvi v. JP Morgan Chase*, 619 F. Supp. 2d 546, 556 (N.D. Ill. 2009) (finding that alleged conduct was not severe or pervasive where the supervisor closely supervised and questioned the plaintiff about her work).

supervision did not constitute a hostile work environment and these allegations did not place him in "any of the multiple levels of workplace trauma that would establish actionable harassment.")

Next, Plaintiff testified at his deposition that Mr. Norwine would not grant him requested time off, but would do so for other employees. However, Plaintiff has failed to show how this constitutes harassment or that it was severe or pervasive enough to interfere with his work performance. *See Herron*, 388 F.3d at 303; *Marine v. H.J. Mohr & Sons, Co.*, No. 04 C 2989, 2005 WL 2293673, at *9 (N.D. Ill. Sept. 19, 2005) (finding that where a plaintiff failed to present any evidence that the alleged harassment of failing to grant the plaintiff time off affected his work performance, the hostile work environment claim failed). Further, Plaintiff has failed to present any evidence linking the denial of time off to his national origin. Plaintiff testified that Mr. Norwine gave time off to other employees who requested it and, when asked why he thought Mr. Norwine did not do so for him, he testified that it was "[b]ecause all these people [are] mostly white people." Pl.'s Mot. Summ. J., Ex. A at 63:11. But he also testified that Garfias was granted time off when requested and that he is Mexican. Accordingly, Plaintiff has failed to show a link between the denial and his national origin.

Finally, Plaintiff also alleges that he had to work ten straight midnight shifts, although in fact he only worked eight. Plaintiff acknowledged that Adams was absent for medical reasons and that he and Mr. Chavez and other employees had to work many straight days. While Plaintiff testified that he thought the schedule made his work conditions unsafe, he did not testify that the heavy schedule was based on his national origin. Rather, the evidence of record supports that Plaintiff and his co-workers had to work such schedules because of Adams' absence.

Accordingly, Plaintiff has failed to raise a genuine issue of material fact regarding his hostile work environment claim and summary judgment must be granted in Defendant's favor on the national origin harassment claim.

## 2. Plaintiff's National Origin Discrimination Claim

A plaintiff may meet his burden of proof for a discrimination claim under Title VII by offering direct evidence of the defendant's discriminatory intent or by proving disparate treatment through the indirect method. *Contreras v. Suncast Corp.*, 237 F.3d 756, 759 (7th Cir. 2001). Under the direct method, the plaintiff must show either through direct or circumstantial evidence that the employer's decision to take the adverse employment action was motivated by an impermissible animus, such as the plaintiff's national origin. *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 938-39 (7th Cir. 2003). Where a plaintiff fails to establish discrimination under the direct method, the plaintiff may still meet his burden through showing discriminatory treatment under the indirect, burden-shifting method. *Contreras*, 237 F.3d at 759. Under the burden-shifting method, established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the plaintiff has the initial burden of establishing a prima facie case of national origin-based discrimination. *Velez v. City of Chicago*, 442 F.3d 1043, 1049-50 (7th Cir. 2006).

To establish a prima facie case under *McDonnell Douglas*, a plaintiff must show that (1) he is the member of a protected class; (2) he was performing his job according to the employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) that similarly situated employees outside the protected class were treated more favorably by the employer. *Atanus v. Perry*, 520 F.3d 662, 672-73 (7th Cir. 2008). If the plaintiff establishes his prima facie case, then the defendant must state a legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. If the defendant offers a legitimate, non-discriminatory

reason, then the burden shifts back to the plaintiff to come forward with evidence showing that the stated reason is pretextual. *Id.* at 804.

Plaintiff's Complaint reveals that Plaintiff has failed to allege any facts showing direct evidence of discrimination. Therefore, Plaintiff must proceed under the indirect, burden-shifting method.

Defendant concedes that Plaintiff is a member of a protected class and suffered adverse employment actions by being disciplined and discharged. However, Defendant contends that Plaintiff cannot show that he met Defendant's legitimate job expectations or that it treated similarly situated employees outside of the protected class more favorably.

First, when evaluating whether a plaintiff was performing his job according to the employer's legitimate expectations, the Court evaluates the plaintiff's performance "through the eyes of [his] supervisors at the time of [his] . . . termination." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008). Per the collective bargaining agreement, all employees were required to adhere to their work schedule. Employees were also required to follow appropriate call off procedures which required the employee to call off prior to the start of the shift that he or she was required to work. It is undisputed that Plaintiff failed to show up for his scheduled third shift on September 6, 2007, and called to report his absence only after his shift already started.

Further, Defendant's General Safety and Plan Conduct Rules and Regulations provide that falsifying or assisting in the falsification of personnel records or any other records may be cause for suspension preliminary to discharge. Plaintiff testified at his deposition that when calling off on September 6, 2007, he said he was doing so because of union business, even though he was not doing any union business on that day.

Plaintiff failed to attend a mandatory meeting on May 14, 2008, and did not deny his absence, only offering as an explanation that no one reminded him of the meeting on that occasion. The record also supports that Plaintiff was previously written up on different occasions for absenteeism.

Based on these circumstances, the evidence of record does not support that Plaintiff was meeting Defendant's legitimate job expectations at the time that he was disciplined and terminated. *See Waggoner v. Olin Corp.*, 169 F.3d 481, 483 (7th Cir. 1999) (providing that "[i]t should not require saying that generally attendance is a requirement of a job."); *Coppage v. Illinois Bell Telephone Co.*, No. 08-1143, 2009 WL 3460457, at *3 (C.D. Ill. Oct. 22, 2009) (finding that a plaintiff failed to show that he met his employer's legitimate performance expectations due to attendance issues). Accordingly, Plaintiff fails to establish a genuine issue of material fact as to whether he was meeting Defendant's legitimate expectations.

Next, even if Plaintiff was able to show that he was meeting Defendant's legitimate expectations, he still must show that similarly situated employees outside of the protected class were treated more favorably. A plaintiff may demonstrate that another employee is similarly situated by showing that the other employee is directly comparable to the plaintiff in all material respects. *Bottoms v. Ill. Dep't of Human Servs.*, 281 F. App'x 561, 564 (7th Cir. 2008). In this context, a similarly situated employee is one who shared the same supervisor, performance standards, and engaged in similar conduct to plaintiff without such differentiating or mitigating circumstances that would "distinguish their conduct or the employer's treatment of them." *Peirick v. Indiana Univ.- Purdue Univ.,* 510 F.3d 681, 688 (7th Cir. 2007).

Plaintiff alleged at his deposition that Mr. Garfias has the same absentee record as him, but was not terminated. However, Plaintiff acknowledged that Mr. Garfias is also Mexican. Therefore,

he is not outside of the protected class and Plaintiff cannot use him as a comparator. *See Atanus*, 520 F.3d at 672-73 (providing that a plaintiff must show that similarly situated employees *outside* the protected class were treated more favorably by the defendant).

Plaintiff also alleges that Likisha Lonzo and Ollie King worked in his crew and also missed the May 14, 2008 meeting. But, unlike Plaintiff, they were not terminated. Although Plaintiff testified that Lonzo was in a last chance agreement with Defendant, her personnel history reflects that, unlike Plaintiff, her prior disciplinary action was primarily for unsatisfactory work and she did not have a similar absentee record. Further, King's personnel record reveals that prior to missing the meeting, he had only been disciplined for being tardy on two occasions. Additionally, Lonzo and King worked in different labor grades and positions than Plaintiff. Therefore, Plaintiff has failed to show that they are similarly situated. *See Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 350 n. 3 (7th Cir. 1997) (providing that parties are not similarly situated where they do not engage in all of the same misconduct); *Taffe v. Illinois Dept. of Employment Sec.*, 229 F. Supp. 2d 858, 869 (N.D. Ill. 2002) (finding that employees were not similarly situated where they held different positions and were disciplined for different types of conduct).

Plaintiff also claims that he was discriminated against by being scheduled to work ten straight days. However, he testified at his deposition that because Adams was out for medical reasons he *and other employees* had to work more hours. In his September 26, 2007 EEOC/East Chicago Human Rights Commission Charge of Discrimination, Plaintiff identified other co-workers (Garfias, Adams, Cleveringa, and Porter) as not being required to work extra shifts. As already noted in this Opinion and Order, Mr. Garfias is not a proper comparator because he is not outside of the protected class. Further, Adams was out on medical leave and the other employees had to cover extra shifts because of his absence, so there is no reason why Defendant would have required

Adams to work additional hours. Ray Cleveringa and Clayton Porter worked in Labor Grade 2 positions, both as crane operators. Accordingly, since they worked in different positions than Plaintiff, they also are not similarly situated employees. *See Taffe*, 229 F. Supp. 2d at 869.

Further, concerning Plaintiff's allegations that Mr. Norwine would not grant him time off,[4] while he would do so for others, Plaintiff identifies Greg Trembczynski, Clayton Porter, Ray Cleveringa, Likisha Lonzo, and Adams as individuals who were allowed time off. As already noted, Porter, Cleveringa, and Lonzo are not similarly situated to Plaintiff. Further, the evidence of record reflects that Greg Trembczynski worked in a Labor Grade 4 position in the annealing crew and Plaintiff has failed to provide any information regarding his disciplinary history. Also, at the time Plaintiff was terminated, Adams had more seniority than Plaintiff as he had 43 years of service for Defendant. *Bio v. Federal Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005) (finding that a substantial gap in work experience precludes finding that two parties are similarly situated). Plaintiff fails to show that he is similarly situated to these employees.

Accordingly, Plaintiff has failed to establish a genuine issue of material fact as to whether similarly situated employees outside of the protected class were treated more favorably than him. Therefore, summary judgment must be granted in Defendant's favor.

Even assuming that Plaintiff is able to show a prima facie case of national origin discrimination, he would still have to show that Defendant's legitimate reasons for terminating him were a pretext for discrimination. Pretext means a lie or phony excuse. *O'Neal v. City of New Albany*, 293 F.3d 998, 1005 (7th Cir. 2002). A plaintiff can establish pretext with evidence that the employer's explanation is not credible. *Atanus*, 520 F.3d at 674. The focus of this inquiry is

---

[4] Plaintiff admitted at his deposition that Mr. Norwine previously granted him time off, but made it harder for him to do so.

whether the employer's stated reason was honest, not whether it was accurate or wise. *Lochard v. Provena St. Joseph Med. Ctr.*, 367 F. Supp. 2d 1214, 1224 (N.D. Ill. 2005).

Based on the record, Plaintiff cannot show that Defendant's reasons for requiring him to work extra hours and disciplining and terminating him for calling off after his shift started, failing to show up for his shift, providing a false reason of union business, and failure to attend the mandatory meeting were pretext for national origin discrimination. As the Court has already discussed in this Opinion and Order, Plaintiff testified at his deposition that other employees were required to work additional hours because Adams was absent for medical reasons. Further, Plaintiff testified that he called off from work after his shift started, failed to show up for his shift, and incorrectly claimed union business as the reason for his absence. Although Plaintiff testified that he disputed the reprimands, he did not elaborate on which reprimands he disputed or the reasons why he disputed them. Plaintiff also testified that he missed the mandatory meeting and only explained that his failure to do so was because no one reminded him.

Accordingly, Plaintiff has failed to show that Defendant's stated reasons for terminating him are dishonest or a pretext for discrimination.

Therefore, based on the foregoing, Plaintiff fails to create a genuine issue of material fact regarding his prima facie case of national origin discrimination and summary judgment must be granted in Defendant's favor as to his Title VII national origin discrimination claim.

### B. Plaintiff's Negligent Hiring, Supervision, and Retention Claims

Next, Plaintiff alleges in his Complaint that Mr. Norwine "was incompetent, unfit, and/or a danger to perform the job he was hired to perform," Pl.'s Compl. at ¶ 19, and that Defendant knew or should have known that Mr. Norwine was unsuitable for this position. Indiana law recognizes a cause of action against an employer for negligent hiring, supervision, and retention of an

employee. *Hansen v. Bd. of Trs. of Hamilton Southeastern School Corp.*, 551 F.3d 599, 609 (7th Cir. 2008). Indiana has adopted the Restatement (Second) of Torts § 317 as the standard under which a court must determine if the employer exercised reasonable care in hiring, supervising, or retaining an employee. *Id.* A cause of action for this tort accrues when an employee "steps beyond the recognized scope of his employment to commit a tortious injury upon a third party." *Bd. of School Com'rs of City of Indianapolis v. Pettigrew*, 851 N.E.2d 326, 332 (Ind. Ct. App. 2006). Because Indiana recognizes the doctrine of respondeat superior, these claims are duplicative and have "no value where an employer has admitted that its employee was acting within the scope of his employment." *Overton v. Foutty & Foutty, LLP*, No. 1:07-cv-0274-DFH-TAB, 2007 WL 2413026, at *7 (S.D. Ind. Aug. 21, 2007).

Here, Defendant admits that Mr. Norwine was acting within the scope of his employment and Plaintiff has failed to allege otherwise.[5] Therefore, he fails to raise a genuine issue of material fact regarding his negligent hiring, supervision, and retention claim and summary judgment must be granted in Defendant's favor. *See Pettigrew*, 851 N.E.2d at 333 (providing that summary judgment should be granted on a negligent supervision claim where the defendant maintained that the parties involved were acting within the scope of their employment).

### C. Plaintiff's Negligent and Intentional Infliction of Emotional Distress Claims

Next, Plaintiff alleges claims for negligent and intentional infliction of emotional distress. To maintain a cause of action for negligent infliction of emotional distress under Indiana law, a plaintiff must satisfy the "modified impact" rule or the "bystander" rule. *Patterson v. Indiana*

---

[5] In Plaintiff's Complaint, he alleges that Defendant caused damage to him by failing to terminate Mr. Norwine and by failing to take corrective action addressing the national origin discrimination occurring at the ETC. In Plaintiff's Title VII claim, he alleges that the discrimination was caused by Defendant's supervisors "acting within the course and scope of their employment." Pl.'s Compl. at ¶ 16. Therefore, Plaintiff's Complaint indicates that Mr. Norwine was acting within the scope of employment when he engaged in the conduct at issue.

*Newspapers, Inc.*, 589 F.3d 357, 367 (7th Cir. 2009). Plaintiff does not come within Indiana's "bystander" rule, which provides a cause of action for a person who witnesses the death or severe injury of a loved one. *Id.* Under the "modified impact" rule, Plaintiff must prove that he has suffered a "direct physical impact," even though the physical impact need not cause any physical injury. *Id.* Here, in being disciplined and terminated, there is no evidence supporting that Plaintiff sustained a direct "physical" impact necessary to maintain a cause of action for negligent infliction of emotional distress. *See Powdertech, Inc. v. Joganic*, 776 N.E.2d 1251, 1263 (Ind. Ct. App. 2002) (holding that a plaintiff who is fired from a job does not sustain the necessary physical impact to establish a claim for negligent infliction of emotional distress).

Next, the tort of intentional infliction of emotional distress is defined as "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." *Id.* at 1264. Indiana courts have rejected a respondeat superior theory of liability on intentional infliction of emotional distress claims. *Neal v. Rock-Tenn Co.*, No. 1:03CV0801-JDT-TAB, 2005 WL 1939955, at *10 (S.D. Ind. April 20, 2005). Instead, an employee is required to prove that the employer deliberately intended to inflict an injury or had actual knowledge that an injury is certain to occur. *Holbrook v. Lobdell-Emery Mfg. Co.*, 219 F.3d 598, 601 (7th Cir. 2000). "[A]n intentional tort committed by a supervisor, manager or foreman could subject that individual to tort liability but would not necessarily expose the employer to liability." *Id.* To impute tortious intent to an employer that is a legal entity, the employee must show either that the corporation is the tortfeasor's alter ego, or that the corporation has substituted its will for that of the individual who committed the tortious acts. *Id.* To prevail under the alter ego theory, the employee must show that the tortfeasor has both ownership and control of the corporation. *Id.* To succeed under the other theory, the employee must show that the

individual who committed the tort was acting pursuant to a policy or decision that was made through the corporation's regular decision-making channels by those who had authority to do so and the policy or decision intended to cause the employee's injury. *Id.*

Here, Plaintiff has not alleged that Mr. Norwine owned or controlled the corporation or that he acted pursuant to Defendant's corporate decision or policy. Therefore, Plaintiff has failed to raise a genuine issue of material fact as to his intentional infliction of emotional distress claim. *See Neal*, 2005 WL 1939955, at *10 (providing that the plaintiff's intentional infliction of emotional distress claim failed where there was no evidence that the corporation was the tortfeasor's alter ego or that the corporation had a policy of harassing or discharging employees who complained about the harassment); *Holbrook*, 219 F.3d at 601 (Providing that a plaintiff's intentional infliction of emotional distress claim failed where the plaintiff did not argue that the alleged harassers owned or controlled the defendant corporation or that they acted pursuant to a decision or policy of the corporation).

Therefore, summary judgment must be granted in Defendant's favor on Plaintiff's negligent and intentional infliction of emotional distress claims.

**CONCLUSION**

Accordingly, based on the forgoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment [DE 28] against Plaintiff. Summary judgment is hereby **ORDERED** in favor of Defendant United States Steel Corporation (EC Tin). Plaintiff shall take nothing by his Complaint in this case against Defendant United States Steel Corporation (EC Tin).

SO ORDERED this 6th day of July, 2010.

s/ Paul R. Cherry

MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:      All counsel of record